UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY G. HENSON,<br><br>  Plaintiff,<br><br>  v.<br><br>RON NEAL, et al.,<br><br>  Defendants. | CAUSE NO. 3:19-CV-396-JD |

OPINION AND ORDER

Timothy G. Henson, a prisoner without a lawyer, is proceeding in this case on three claims. ECF 56. First, he is proceeding "against Warden Ron Neal, Executive Assistant Mark Newkirk, Unit Team Manager Marion Thatcher, and Law Library Supervisor Erin Jones in their individual capacities for compensatory and punitive damages for retaliating against him in violation of the First Amendment by terminating his employment as a law library clerk on August 28, 2018, in response to his exercise of his First Amendment rights by organizing peaceful protests outside of Indiana State Prison ["ISP"] and by filing grievances[.]" *Id.* at 2. Second, he is proceeding "against Warden Ron Neal, Executive Assistant Mark Newkirk, Unit Team Manager Marion Thatcher, and Law Library Supervisor Erin Jones in their official capacities for injunctive relief to cease retaliating against him for exercising his First Amendment rights to organize peaceful protests outside [ISP] and by filing grievances[.]" *Id.* Third, he is proceeding "against Warden Ron Neal, Executive Assistant Mark Newkirk, Unit Team Manager Marion Thatcher, and Law Library Supervisor Erin Jones in their individual capacities for compensatory and punitive damages

for terminating his employment as a law library clerk on August 28, 2018, by treating him less favorably than another law library clerk that engaged in the same conduct without a rational basis, in violation of the Equal Protection Clause of the Fourteenth Amendment[.]" *Id.* at 2-3.

Henson filed a motion for summary judgment. ECF 73. The defendants filed a response. ECF 88. Henson has not filed a reply, and the time for doing so has expired. The defendants also filed a cross-motion for summary judgment. ECF 89. Henson was provided notice of the defendants' summary judgment motion and granted an extension to file a response, but Henson has not responded.[1] Therefore the court will now rule on both summary judgment motions.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in

---

[1] The court will consider the arguments and evidence Henson raises in his summary judgment motion (ECF 73) in response to the defendants' summary judgment motion.

that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

## I. FACTS

Henson is an inmate incarcerated at ISP. ECF 73-1 at 2. In April 2018, he began working as a clerk at ISP's law library. ECF 73-1 at 4; ECF 90-1 at 2. Law Library Supervisor Jones was Henson's supervisor. ECF 90-1 at 1-2. Henson's responsibilities were to organize library materials and ensure other offenders were able to access the materials they required. *Id.* at 2.

Between April 2018 and August 2018, Henson was in contact with a victim's advocacy group outside of the prison and provided the group information about the conditions of confinement at ISP. ECF 73-3 at 45-46. On June 23, 2018, a member of the victim's advocacy group held a protest outside of ISP at Henson's direction. *Id.* at 46; ECF 73-1 at 4. On August 25, 2018, a second protest was held outside of ISP at Henson's direction. ECF 73-1 at 5; ECF 73-3 at 46.

On August 27, 2018, Henson submitted an informal grievance to ISP's grievance office regarding a lighting issue in his cell block. ECF 90-1 at 3. The next day, it was brought to Law Library Supervisor Jones' attention that Henson had prepared this informal grievance during his work hours at the law library. *Id.* Law Library Supervisor Jones submitted a performance evaluation for Henson, noting his conduct was "unacceptable" and violated his employment expectations. *Id.* Law Library Supervisor Jones noted on the evaluation that Henson had been told he could not work on personal legal materials during work hours unless he filled out a request and obtained a pass. *Id.* at 4. Law Library Supervisor Jones forwarded this performance evaluation to Unit Team Manager Thatcher. *Id.* Unit Team Manager Thatcher had an interview with Henson regarding the performance evaluation. ECF 90-2 at 4. Unit Team Manager Thatcher informed Henson his employment with the law library was terminated and offered him alternative job placements, which Henson declined. *Id.* On August 29, 2018, Henson's employment with the law library was terminated by the Unit Team staff. *Id.*

Henson filed a classification appeal of the termination decision, arguing ISP's law library did not have any policy against preparing personal legal documents while on duty and he was terminated in retaliation for organizing protests and filing grievances. ECF 73-1 at 11; ECF 73-3 at 72; ECF 90-3 at 2. Executive Assistant Newkirk denied the appeal, concluding Henson was terminated following an unacceptable performance evaluation and the record failed to show any improper reason for his termination. ECF 90-3 at 2. Henson's grievance complaining of retaliation was also denied. ECF 90-7 at 1. Executive Assistant Newkirk later recommended denial of

4

Henson's tort claim regarding his termination, stating Henson was terminated for failing to follow directions in regard to his duties. ECF 90-3 at 3. Warden Neal concurred with Executive Assistant Newkirk's recommendation to deny the tort claim. ECF 90-4 at 2. Because no party disputes these facts, the court accepts them as undisputed.

## II.     ANALYSIS

### a.  *First Amendment Retaliation Claims*

Henson is proceeding against Warden Neal, Executive Assistant Newkirk, Unit Team Manager Thatcher, and Law Library Supervisor Jones on one claim "in their individual capacities for compensatory and punitive damages for retaliating against him in violation of the First Amendment by terminating his employment as a law library clerk on August 28, 2018, in response to his exercise of his First Amendment rights by organizing peaceful protests outside of [ISP] and by filing grievances," and on one claim "in their official capacities for injunctive relief to cease retaliating against him for exercising his First Amendment rights to organize peaceful protests outside [ISP] and by filing grievances[.]" ECF 56 at 2.

The defendants argue summary judgment is warranted in their favor because there is no evidence they retaliated against Henson for protected First Amendment activity. ECF 90 at 12-14. To prevail on a First Amendment retaliation claim, Henson must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the

5

Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Here, the record shows Henson engaged in activity protected by the First Amendment, as it is undisputed he filed grievances and contacted a victim's advocacy group that organized protests at ISP. *See* ECF 73-3 at 45-47; ECF 90-1 at 3. The defendants dispute Henson was responsible for organizing the protests at ISP, but they do not dispute that filing grievances and contacting a victim's advocacy group are protected First Amendment activity. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"). Moreover, the defendants do not dispute that terminating Henson's employment is a deprivation that would likely deter First Amendment activity in the future. Thus, the first two elements are met. It only remains to be determined whether Henson has provided sufficient evidence of causation.

To demonstrate causation, Henson must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted). Once Henson makes this showing, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendant carries this burden, the plaintiff may still reach trial by showing that the defendant's reasons were merely pretextual. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

The defendants argue Henson has not shown causation because he has provided no evidence of a retaliatory motive and it is undisputed he was terminated solely for

6

utilizing work hours for personal reasons. ECF 90 at 12-14. However, Henson has provided evidence of a retaliatory motive, as he offers affidavits from several ISP law clerks that they heard Law Library Supervisor Jones tell Henson he was "really being terminated" for organizing protests and filing grievances. ECF 73-3 at 8, 19, 30. Moreover, the timing of Henson's termination supports an inference of causation, as he was terminated only three days after the second protest and one day after he submitted an informal grievance. *See Culver v. Gorman & Co.*, 416 F.3d 540, 545–46 (7th Cir. 2005) (circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (timing alone can suffice when the adverse action "follows close on the heels of protected expression"). Additionally, Henson has provided evidence the defendants' reason for terminating his employment was pretextual, as he offers attestations from several ISP law clerks that (1) the law library has a long-standing policy of allowing law clerks to research and prepare their legal documents while on duty without obtaining a pass (ECF 73-3 at 2-3, 12-14, 24-26, 35-38, 42-43), and (2) Law Library Supervisor Jones was aware and approved of Henson's use of the law library's typewriter to draft his informal grievance (*Id.* at 4, 13-14, 25-26). Because the defendants have offered no evidence of any written policy at ISP forbidding law clerks from working on personal legal documents, this disagreement over whether Henson violated a policy raises a credibility dispute which cannot be resolved on summary judgment. Based on this evidence, a reasonable jury could conclude the defendants terminated Henson in retaliation for his protected First

7

Amendment activity and their reliance on his performance evaluation was merely pretextual. Thus, Henson has provided sufficient evidence by which a reasonable jury could find the defendants violated his First Amendment rights.

The defendants also argue the record fails to show Law Library Supervisor Jones, Executive Assistant Newkirk, and Warden Neal were personally involved in the termination decision. ECF 90 at 16-18. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* A supervisor won't be liable without "a showing of direct responsibility for the improper action[.]" *Id.* Put otherwise, individuals will only be liable for their own misconduct, unless they are responsible for creating the peril that leads to the constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

Law Library Supervisor Jones attests she only supervises offenders who are hired to work in the law library and has no authority to hire or fire offenders. ECF 90-1 at 5. However, Henson provides evidence Law Library Supervisor Jones wrote a potentially false and pretextual performance evaluation which led to his termination. Construing the facts in the light most favorable to Henson, a reasonable jury could therefore conclude Law Library Supervisor Jones was personally involved in Henson's termination. Next, Executive Assistant Newkirk attests he is only responsible for assisting Warden Neal in administrative matters and had no personal involvement in the decision to terminate Henson's employment at the law library. ECF 90-3 at 3.

8

However, Henson offers affidavits from three law clerks that they heard Law Library Supervisor Jones state to Henson that she had been ordered by Executive Assistant Newkirk to terminate Henson's employment. ECF 73-3 at 8, 18, 30. A reasonable jury could therefore conclude Executive Assistant Newkirk was personally involved in Henson's termination. Lastly, Warden Neal attests he was not personally responsible for hiring or firing inmates enrolled in prison employment. ECF 90-4 at 2. Henson offers evidence Warden Neal was involved in denying his grievances regarding his termination, but Henson has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Because Henson offers no other evidence Warden Neal was personally involved in his termination, Warden Neal cannot be held liable under § 1983. Summary judgment is thus warranted in Warden Neal's favor on both of Henson's First Amendment retaliation claims.

Lastly, the defendants argue they are entitled to qualified immunity because they never knowingly violated the law and only terminated Henson's employment due to his performance. ECF 90 at 18-20. However, construing the facts in the light most favorable to Henson, a reasonable jury could conclude the defendants terminated Henson's employment in retaliation for his filing of grievances and communicating with a victim's advocacy group, which is unconstitutional under clearly established Seventh Circuit precedent. *See DeWalt*, 224 F.3d at 618.

Accordingly, summary judgment must be granted as to Warden Neal on Henson's First Amendment retaliation claims but denied as to the remaining defendants. Henson's request for summary judgment on these claims must be denied because the defendants have raised material disputed facts.

### b. *Equal Protection Claim*

Henson is proceeding against all defendants "for terminating his employment as a law library clerk on August 28, 2018, by treating him less favorably than another law library clerk that engaged in the same conduct without a rational basis, in violation of the Equal Protection Clause of the Fourteenth Amendment." ECF 56 at 2-3. Specifically, Henson argues the defendants treated him differently than a similarly situated law clerk because they enforced a rule against him which was not enforced against other law clerks. ECF 73-1 at 41-46. Because Henson does not argue his disparate treatment was based on a suspect class, he is proceeding on a "class of one" theory of equal protection, which prohibits the government from treating a person arbitrarily. *Engquist v. Oregon Dep't of Agriculture,* 553 U.S. 591, 594 (2008). However, a "class of one" theory "does not apply to the employment context generally, let alone a prison's workplace." *Lewis v. Henneman*, 752 F. App'x 365, 367 (7th Cir. 2019); *see also Engquist,* 553 U.S. at 609 (foreclosing class-of-one claims for public employees challenging employment decisions). Thus, because Henson has not provided any evidence supporting a cognizable Equal Protection claim, summary judgment is warranted in favor of all defendants on Henson's Equal Protection claim. Henson's request for summary judgment on this claim must be denied.

10

For these reasons, the court:

(1) DENIES Henson's motion for summary judgment (ECF 73);

(2) GRANTS the defendants' cross-motion for summary judgment (ECF 89) as to Henson's First Amendment retaliation claims against Warden Neal and Henson's Equal Protection claim against all defendants but DENIES it in all other respects; and

(3) REMINDS the parties this case is now proceeding only on Henson's remaining claims:

   a. against Executive Assistant Mark Newkirk, Unit Team Manager Marion Thatcher, and Law Library Supervisor Erin Jones in their individual capacities for compensatory and punitive damages for retaliating against him in violation of the First Amendment by terminating his employment as a law library clerk on August 28, 2018, in response to his exercise of his First Amendment rights by filing grievances and communicating with a victim's advocacy group that arranged protests outside of ISP; and

   b. against Executive Assistant Mark Newkirk, Unit Team Manager Marion Thatcher, and Law Library Supervisor Erin Jones in their official capacities for injunctive relief to cease retaliating against him for exercising his First Amendment rights by filing grievances and communicating with a victim's advocacy group that arranged protests outside of ISP.

SO ORDERED on March 28, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT